**Fill in this information to identify the case:**

Debtor 1  Susan Mason
Debtor 2
(Spouse, if filing)
United States Bankruptcy Court   Northern District of Illinois
Case number: 19-09779

FILED
U.S. Bankruptcy Court
Northern District of Illinois
5/10/2019
Jeffrey P. Allsteadt, Clerk

EXHIBIT A  9

# Official Form 410
## Proof of Claim

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must **leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1: Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | Orlan-Brook Condominium Owner's Association<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? |
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br>Orlan-Brook Condominium Owner's Association<br>Name<br>Keay & Costello, P.C.<br>128 S. County Farm Road<br>Wheaton, IL 60187<br><br>Contact phone   630-690-6446<br>Contact email   ben@keaycostello.com<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one): _____ | **Where should payments to the creditor be sent? (if different)**<br>Name<br><br><br><br>Contact phone _____<br>Contact email _____ |
| 4. Does this claim amend one already filed? | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____   Filed on _____<br>MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes. Who made the earlier filing? _____ |

Official Form 410   Proof of Claim   page 1

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |
| 7. How much is the claim? | $ 2533.26    Does this amount include interest or other charges?<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Association common expense |
| 9. Is all or part of the claim secured? | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☑ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:**   Association lien<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**   $ 153665.00<br>**Amount of the claim that is secured:**   $ 2533.26<br>**Amount of the claim that is unsecured:**   $ 0.00   (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**   $ 0.00<br><br>**Annual Interest Rate** (when case was filed)   _____ %<br>☑ Fixed<br>☐ Variable |
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____ |
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410                                          Proof of Claim                                          page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies | $ |
| | * Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    5/10/2019
                    MM / DD / YYYY

/s/ Benjamin J. Rooney

Signature

Print the name of the person who is completing and signing this claim:

Name       Benjamin J. Rooney
           First name   Middle name   Last name

Title

Company    Keay & Costello, P.C.
           Identify the corporate servicer as the company if the authorized agent is a servicer

Address    128 S. County Farm Road
           Number   Street
           Wheaton, IL 60187
           City   State   ZIP Code

Contact phone   630-690-6446     Email   ben@keaycostello.com

# Statement

**Orlan Brook Condo Assn**

c/o Weaver Realty & Management, Inc
7815 W. 159th St.
Tinley Park, IL 60477

| Date |
|---|
| 4/17/2019 |

| Bill To |
|---|

Susan A. Mason
15712 S. Orlan Brook Dr #151
Orland Park, IL 60462

**Make Check Payable to
Orlan Brook Condo
Any Questions Call
708/429-0004**

| Amount Due | Amount Enc. |
|---|---|
| $2,158.26 | |

| Date | Item | Description | Amount | Balance |
|---|---|---|---|---|
| 04/01/2019 *4-19-19* | Garbage Payments | Garbage Payments *BK Legal fee* | 21.00 *400.00* | 2,133.26 *2,533.26* |

| Current | 1-30 Days Past Due | 31-60 Days Past Due | 61-90 Days Past Due | Over 90 Days Past Due | Amount Due |
|---|---|---|---|---|---|
| 790.18 | 373.27 | 323.27 | 323.27 | 348.27 | |

# Statement

**Orlan Brook Condo Assn**

c/o Weaver Realty & Management, Inc
7815 W. 159th St.
Tinley Park, IL 60477

Date: 4/17/2019

Bill To

Susan A. Mason
15712 S. Orlan Brook Dr #151
Orland Park, IL  60462

Make Check Payable to
Orlan Brook Condo
Any Questions Call
708/429-0004

| Amount Due | Amount Enc. |
|---|---|
|  |  |

| Date | Item | Description | Amount | Balance |
|---|---|---|---|---|
| 09/30/2018 |  | Balance forward |  | 696.54 |
| 10/01/2018 | Assessments | Monthly Assessment | 304.27 | 1,000.81 |
| 10/01/2018 | Garbage Payments | Garbage Payments | 19.00 | 1,019.81 |
| 10/07/2018 |  | PMT #1779. balance thru Sept | -696.54 | 323.27 |
| 10/16/2018 | Late Fees | Assessments are due on the first and late after the 15th | 25.00 | 348.27 |
| 11/01/2018 | Assessments | Monthly Assessment | 304.27 | 652.54 |
| 11/01/2018 | Garbage Payments | Garbage Payments | 19.00 | 671.54 |
| 11/16/2018 | Late Fees | Assessments are due on the first and late after the 15th | 25.00 | 696.54 |
| 12/01/2018 | Assessments | Monthly Assessment | 304.27 | 1,000.81 |
| 12/01/2018 | Garbage Payments | Garbage Payments | 19.00 | 1,019.81 |
| 12/15/2018 |  | PMT #1801. | -348.27 | 671.54 |
| 12/16/2018 | Late Fees | Assessments are due on the first and late after the 15th | 25.00 | 696.54 |
| 01/01/2019 | Assessments | Monthly Assessment | 302.27 | 998.81 |
| 01/01/2019 | Garbage Payments | Garbage Payments | 21.00 | 1,019.81 |
| 01/14/2019 |  | PMT #1808. Nov | -348.27 | 671.54 |
| 01/16/2019 | Late Fees | Assessments are due on the first and late after the 15th | 25.00 | 696.54 |
| 02/01/2019 | Assessments | Monthly Assessment | 302.27 | 998.81 |
| 02/01/2019 | Garbage Payments | Garbage Payments | 21.00 | 1,019.81 |
| 02/16/2019 | Late Fees | Assessments are due on the first and late after the 15th | 25.00 | 1,044.81 |
| 02/19/2019 | Tax Appeal Fee | Tax Appeal Fee | 77.33 | 1,122.14 |
| 02/22/2019 |  | PMT #1821. recd 2/22 - applied to Dec | -348.27 | 773.87 |
| 03/01/2019 | Assessments | Monthly Assessment | 302.27 | 1,076.14 |
| 03/01/2019 | Garbage Payments | Garbage Payments | 21.00 | 1,097.14 |
| 03/15/2019 |  | PMT #1823. | -77.33 | 1,019.81 |
| 03/16/2019 | Late Fees | Assessments are due on the first and late after the 15th | 25.00 | 1,044.81 |
| 03/20/2019 | Special Assessment | Special Assessment-increase in insurance policy premium, due no later than May 31, 2019 | 533.78 | 1,578.59 |
| 03/22/2019 | Note/Memo | 30-day demand sent | 0.00 | 1,578.59 |
| 03/22/2019 | Attorney Fees | Attorney Fees-prep 30-day demand | 225.00 | 1,803.59 |
| 03/22/2019 | Legal Fees | Legal Fees-postage for 30-day demand | 6.40 | 1,809.99 |
| 04/01/2019 | Assessments | Monthly Assessment | 302.27 | 2,112.26 |

| Current | 1-30 Days Past Due | 31-60 Days Past Due | 61-90 Days Past Due | Over 90 Days Past Due | Amount Due |
|---|---|---|---|---|---|
| 790.18 | 373.27 | 323.27 | 323.27 | 348.27 |  |

Doc#: 1220731009 Fee: $136.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 07/25/2012 10:20 AM Pg: 1 of 50

**AMENDED AND RESTATED DECLARATION OF CONDOMINIUM ASSOCIATION AND OF EASEMENTS, RESTRICTIONS AND COVENANTS FOR ORLAN-BROOK CONDOMINIUM**

For Use By Recorder's Office Only

After recording to be returned to:

KERRY T. BARTELL, ESQ.
Kovitz Shifrin Nesbit
750 Lake Cook Road, Suite 350
Buffalo Grove, IL  60089 – 847/537-0500

10. <u>Alterations, Additions or Improvements</u>: No alteration of any Common Elements, or any additions or improvements thereto, shall be made by any Unit Owner without prior written approval of the Board. The Board may authorize and charge as Common Expenses alterations, additions and improvements of the Common Elements as provided in the By-Laws. Any Unit Owner may make alterations within the Unit of the Unit Owner or any additions or improvements within such Unit without the prior written approval of the Board, but such Unit Owner shall be responsible for any damage to other Units, the Common Elements, the Property, or any part thereof, resulting from such alterations, additions or improvements.

11. <u>Decorating</u>: Each Unit Owner, at his own expense, shall furnish and be responsible for all decorating within his own Unit, as may be required from time to time, including painting, wall papering, washing, cleaning, paneling, floor covering, draperies, window shades, curtains, lighting and other furnishings and interior decorating. Each Unit Owner shall be entitled to the exclusive use of the interior surfaces of the perimeter walls, floor and ceilings, and such Unit Owner shall maintain said interior surfaces in good condition at his sole expense, as may be required from time to time. Said maintenance and use of interior surfaces shall be subject to the rules and regulations of the Association, but each such Unit Owner shall have the right to decorate such interior surfaces from time to time as he may see fit and at his sole expense. Decorating of the Common Elements (other than interior surfaces within the Units as above provided) and any redecorating of Units, to the extent such redecorating of Units is made necessary by damage to Units caused by maintenance, repair or replacement of the Common Elements by the Association, shall be furnished by the Association as part of the common expenses.

12. <u>Recreational Facilities</u>: There is a recreation area with walks, lawns, swimming pool, recreation building and other facilities and amenities on the Property. Unit owners shall have an easement which shall run with the land and pass with the ownership of the Unit for the use and enjoyment of the facilities. Use of the recreation area and facilities shall be subject to the Declaration and the Association By-Laws. The Board of Directors shall be empowered to make such rules and regulations or restrictions pertaining to the use of the recreation facilities as may be deemed appropriate.

ARTICLE VI

<u>ASSESSMENT – MAINTENANCE FEES</u>

1. The Board shall estimate the total amount necessary to pay the cost of wages, materials, insurance, services and supplies which will be required during the ensuing calendar year for the rendering of all services, together with a reasonable amount considered by the Board to be necessary for a reserve for contingencies and replacements, as to the amount of such estimate, with

reasonable itemization thereof. The annual budget shall also take into account the estimated net available cash income for the year from the operation or use of the Common Elements, and shall project an "estimated cash requirement." Said "estimated cash requirement" shall be assessed to the Unit Owners according to each Unit Owner's percentage of ownership in the Common Elements as set forth in Exhibit "B" attached hereto. On or before January 1st of the ensuing year, and the 1st of each and every month of said year, each Unit Owner, jointly and severally, shall be personally liable for and obligated to pay to the Board or as it may direct, one-twelfth (1/12) of the assessment made pursuant to this paragraph. On or before April 1st of each calendar year, the Board shall supply to all Owners an itemized accounting of the maintenance expenses for the preceding calendar year, actually incurred and paid, together with a tabulation of the amounts collected pursuant to the estimates provided, and showing the net amount over and short of the actual expenditures plus reserves. Such accounting shall be prepared by a certified public accountant. Any amount accumulated in excess of the amount required for actual expenses and reserves shall be credited according to each Unit Owner's percentage of ownership in the Common Elements, to the next monthly installments due from Unit Owners under the current year's estimate, until exhausted, and one-third (1/3) of any net shortage shall be added, according to each Unit Owner's percentage of ownership in the Common Elements, to the installments due in each of the succeeding three (3) months after rendering of the account.

2. The Board shall build up and maintain a reasonable reserve for contingencies and replacements. Extraordinary expenditures not originally included in the annual estimate which may become necessary during the year, shall be charged first against such reserve. If said "estimated cash requirement" proves inadequate for any reason, including non-payment of any Unit Owner's assessment, the Board may at any time levy a further assessment, which shall be assessed to the Unit Owners according to each Unit Owner's percentage of ownership in the Common Elements, The Board shall serve notice of such further assessment on all Unit Owners by a statement in writing giving the amount and reasons therefor, and such further assessment shall become effective with the monthly maintenance payment which is due more than ten (10) days after delivery or mailing of such notice of further assessment. All Unit Owners shall be personally liable for the obligation to pay their respective adjusted monthly amount.

3. (a) Except as provided in subsection 3(b) below, if an adopted annual budget or any separate assessment adopted by the Board would result in the sum of all regular and special assessments payable in the current fiscal year exceeding one hundred fifteen percent (115%) of the sum of all regular and separate assessments payable during the preceding fiscal year, the Board, upon written petition by Unit Owners with twenty percent (20%) of the votes of the Association, delivered to the Board within fourteen (14) days of the Board action to adopt such regular or separate assessments, shall call a meeting of the Unit

Owners within thirty (30) days of the date of delivery of such petition to consider the annual budget or separate assessment. Unless a majority of the total votes of the Unit Owners are cast at such meeting to reject the budget or separate assessment, the budget and such separate assessment shall be deemed ratified.

(b) Separate assessments for expenditures relating to emergencies or mandated by law, may be adopted by the Board without being subject to Unit Owner approval or the provisions of Subsection 3(a) above or 3(c) below. As used herein, "emergency" means an immediate danger to the structural integrity of the Common Elements or to the life, health, safety or property of the Unit Owners.

(c) Assessments for capital improvements or additions to the Common Elements or to property owned by the Association not included in the annual budget adopted by the Board shall be separately assessed and shall be subject to the approval of two-thirds (2/3) of the total votes of all Unit Owners. The Board may adopt separate assessments payable over more than one (1) fiscal year.

(d) With respect to multi-year assessments not governed by Subsections 3(b) and 3(c) above, the entire amount of the multi-year assessment shall be deemed considered and authorized in the first fiscal year in which such separate assessment is approved.

4. The failure or delay of the Board to prepare or serve the annual or adjusted estimate on the Unit Owner shall not constitute a waiver or release in any manner of such Unit Owner's obligation to pay the maintenance costs and necessary reserves, as herein provided, whenever the same shall be determined, and in the absence of any annual estimate or adjusted estimate, the Unit Owner shall continue to pay the monthly maintenance charge at the then existing monthly rate established for the previous period until the monthly maintenance payment which is due more than ten (10) days after such new annual or adjusted estimate shall have been mailed or delivered.

5. The Board shall keep full and correct books of account in chronological order of the receipts and expenditures affecting the Common Elements, specifying and itemizing the maintenance and repair expenses of the Common Elements and any other expenses incurred, such vouchers and records authorizing the payment shall be available for inspection by any Unit Owner or any representative of a Unit Owner duly authorized in writing, at such reasonable time or times during normal business hours as may be requested by the Unit Owner. Upon ten (10) days' notice to the Board and payment of a reasonable fee, any Unit Owner shall be furnished a statement of his account setting forth the amount of any unpaid assessments or other charges due and owing from such Unit Owner.

1023447.1

6. All funds collected hereunder shall be held and expanded for the purposes designated herein, and (except for such special assessments as may be levied hereunder against less than all the Unit Owners and for such adjustments as may be required to reflect delinquent or prepaid assessments) shall be deemed to be held for the benefit, use and account of all the Unit Owners in the percentages set forth in Exhibit "B".

7. If a Unit Owner is in default in the monthly payment of the aforesaid charges or assessments for thirty (30) days, the members of the Board may bring suit for and on behalf of themselves and as representatives of all Unit Owners, to enforce collection thereof or to foreclose the lien therefor as hereinafter provided; and there shall be added to the amounts due the costs of said suit, and other fees and expenses together with legal interest and reasonable attorneys' fees to be fixed by the Court. To the extent permitted by any decision or any statute or law now or hereafter effective, the amount of any delinquent and unpaid charges or assessments and interest, costs and fees as above provided shall be and become a lien or charge against the Unit Ownership of the Unit Owner involved when payable and may be foreclosed by any action brought in the names of the Board as in the case of foreclosure of liens against real estate. Said lien shall take effect and be in force when and as provided in the Act; provided, however, that encumbrances owned or held by any bank, insurance company or savings and loan association shall be subject as to priority after written notice to said encumbrancer of unpaid common expense only to the lien of all common expenses on the encumbered Unit Ownership which become due and payable subsequent to the date said encumbrancer either takes possession of the Unit, accepts a conveyance of any interest in the Unit Ownership, or has a receiver appointed to a suit to foreclose his lien. Any encumbrancer may from time to time request in writing a statement from the Board setting forth the unpaid common expenses with respect to the Unit Ownership covered by such encumbrance.

In the event of any default by any Unit Owner in the performance of his obligations under the Act or under the declaration, or. the rules and regulations of the Board of Managers, the Board of Managers or its agents shall have such rights and remedies additional to those provided by the Act as shall be provided in the Declaration or By-Laws, or as shall otherwise be provided or permitted By-Law. If such remedies shall include the right to take possession of such Unit Owner's interest in the Property, the Board of Managers or its agents may maintain for the benefit of all the other Unit Owners an action for possession in the manner prescribed by "An Act in Regard to Forcible Entry and Detainer", approved February 16, 1874, as amended.

8. The Board shall also bill and assess each Unit Owner monthly (or at less frequent intervals if it so determines), the assessments levied against such Unit Owner for the Recreation Facility. Each such assessment billed to a Unit Owner, in addition to becoming a lien and being enforceable by the ORLAN-

BROOK CONDOMINIUM OWNER'S ASSOCIATION as provided in its By-Laws or the ORIAN-BROOK CONDOMINIUM OWNER'S ASSOCIATION DECLARATION, shall become due and payable as the Board determines and shall become a lien and be enforceable in the same manner as provided in paragraph 7 above. Any assessment collected for the ORLAN-BROOK CONDOMINIUM OWNER'S ASSOCIATION shall be forwarded to it or to such agent as it shall designate.

      9. The maintenance fund shall not be used unless otherwise provided herein for the repair or replacement of locks, doors, windows, sliding doors or glass therein, heating, cooling, plumbing and electrical fixtures located on or in and serving exclusively on Unit or repair or replacement of garage doors or automatic garage door opening devices located on or in and serving the garage Unit exclusively.

## ARTICLE VII

### COVENANTS AND RESTRICTIONS
### as to Use and Occupancy

The Units and Common Elements shall be occupied and used as follows:

      (a) No part of the Property shall be used for other than housing and related common purposes for which the Property was designed. Each Unit or any two or more adjoining Units used together shall be used as a residence for a single family or such other uses permitted by this Declaration and for no other purpose. That part of the Common Elements separating any two or more adjoining Units used together as aforesaid may be altered to afford ingress and egress to and from such adjoining Units in such manner and upon such conditions as shall be determined by the Board in writing.

      (b) There shall be no obstruction of the Common Elements nor shall anything be stored in the Common Elements without the prior consent of the Board except as hereinafter expressly provided. Each Unit Owner shall be obligated to decorate, maintain and keep in good order and repair his own Unit.

      (c) Nothing shall be done or kept in any Unit or in the Common Elements which will increase the rate of insurance on the Building or contents thereof, applicable for residential use, without prior written consent of the Board. No Unit Owner shall permit anything to be done or kept in his Unit or in the Common Elements which will result in the cancellation of insurance on the Building, or contents thereof, or which would be in violation of any law. No waste shall be committed in the Common Elements.

      (d) Each Unit Owner shall be responsible for his own insurance on his personal property in his own Unit, his personal property stored elsewhere

24

1023447.1